**ALLENTOWN RECORD CO., Inc.**
**v. AGRASHELL, Inc.**
**Civ. A. 11278.**

United States District Court
E. D. Pennsylvania.
Dec. 28, 1951.

Morris Efron, of Allentown, Pa., and Nathan Lavine, of Philadelphia, Pa., for plaintiff.

John R. McConnell and Thomas B. K. Ringe, of Morgan, Lewis & Bockius, of Philadelphia, Pa., for defendant.

BARD, District Judge.

Plaintiff is a Pennsylvania corporation that has its principal place of business in Allentown, Pennsylvania. Defendant is a Delaware corporation that has its principal place of business in Los Angeles, California; defendant is not registered with the Secretary of the Commonwealth as a foreign corporation authorized to transact business in Pennsylvania. Plaintiff manufactures phonograph records. Defendant makes vegetable shell products used in the manufacture of plastics. This suit is for breach of warranty in a product sold by defendant to plaintiff for the manufacture of plastic records. It is now before me on defendant's motion to dismiss the complaint on the ground that defendant is not amenable to service of process in Pennsylvania since it is not "doing business" in this Commonwealth.

In relating why I find that defendant is "doing business" in Pennsylvania for the purposes of this suit only, I have omitted all of the many facts that tend toward an opposite conclusion or that I consider irrelevant to this opinion.

Like all progressive companies today, defendant is constantly seeking new markets for its products. To develop such new markets, defendant often employs outside chemical concerns on a fee basis to test different raw materials and to determine the industrial potential of different vegetable shell products in various kinds of plastic compounds.

Sometimes, however, defendant enters into an arrangement with a manufacturer who is a prospective customer to make these tests and experiments. If these experiments develop a new plastic that gives equal or better performance and is cheaper than the substance the manufacturer is then using, the natural culmination of such an arrangement is that the manufacturer will order defendant's product to make and use this new plastic.

It was such an arrangement that brought about this suit. In 1946 or 1947 defendant's president contacted plaintiff's president to see if plaintiff would be willing to use its facilities to test a substance called Plastofil in the manufacture of plastic records. Plaintiff agreed, and for more than a year many chemical compounds were tested in plaintiff's plant. As a result of these tests, defendant claimed to have developed a new plastic, Agilite-R. Defendant's president prepared a report on Agilite-R, a copy of which was supplied to plaintiff. On May 20, 1948 plaintiff ordered from defendant 70,000 pounds of Plastofil, a component part of Agilite-R. The report and this order comprise the basis of plaintiff's claim for breach of warranty.

Defendant's president lives and works in Easton, Pennsylvania, but spends less than 10% of his time in Pennsylvania on defendant's business. For his convenience defendant rents a small office in Easton. This office is not listed in any directory in Easton and does not have defendant's name on its door. The personnel in this office are a half time secretary and a full time chemist. The duties of this chemist, who has the misleading title of Sales Engineer, are to act as a consultant to aid in the development of new uses for defendant's products and to work with defendant's customers to see that defendant's products are used properly.

During the experimental stage of Plastofil and Agilite-R plaintiff worked exclusively with defendant's president and this chemist. The report on Agilite-R gave Easton as defendant's address.

Except for the order of 70,000 pounds of Plastofil, which was sent to Los Angeles via the Easton office, plaintiff's contact with defendant was solely through defendant's Easton office.

█ Since jurisdiction over this case is based upon diversity of citizenship only, I must apply the Pennsylvania law of "doing business" to determine the validity of service of process.[1] Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Read v. Corbitt Co., D.C., 10 F.R.D. 125, 128.

---

1. The recent opinion of Judge Grim of this court in Moore v. Atlantic Coast Line R. Co., D.C., 98 F.Supp. 375, is distinguishable since that case involved a federal question.

Beginning with Shambe v. Delaware & Hudson R. R. Co., 288 Pa. 240, 135 A. 755, down through Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, 79 A.2d 222, and Law v. Atlantic Coast Line R. Co., 367 Pa. 170, 79 A.2d 252, Pennsylvania has applied definite requirements to determine whether a corporation is "doing business". These principles as enunciated on pages 246–247 of 288 Pa., on page 757 of 135 A., of the Shambe case are:

"The essential elements which constitute 'doing business,' as required by our laws, are the same as those necessary under the due-process clause of the federal Constitution. We must ascertain if the following requisite essentials appear in this case: (1) The company must be present in the state; (2) by an agent (citing cases); (3) duly authorized to represent it in the state (citing cases); (4) the business transacted therein must be by or through such agent (citing cases); (5) the business engaged in must be sufficient in quantity and quality (citing cases); (6) there must be a statute making such corporations amenable to suit (citing case). The term 'quality of acts' means those directly furthering, or essential to, corporate objects; they do not include incidental acts. (Citing cases.) By 'quantity of acts' is meant those which are so continuous and sufficient to be termed general or habitual. A single act is not enough. (Citing case.) Each case must depend on its own facts, and must show that the essential requirement of jurisdiction has been complied with."

It is clear that (1), (2), (3), (4) and (6) are present in this case. Defendant does have a small office in Easton, staffed by its president, a chemist and a part time secretary. All of plaintiff's dealings with defendant were handled by the personnel in this office. The Act of June 8, 1911, as amended,[2] permits suits against non-registered foreign corporations doing business in Pennsylvania on contracts entered into with such corporations.

The crucial element is (5): whether defendant's business was sufficient in quantity and quality.

Certainly, the development of new products and of new uses for its old products not only furthers but may also be essential to the corporate life and well-being of defendant.

Plaintiff's continual testing of a great variety of chemical compositions over a period of more than one year, and the culmination of these tests in plaintiff's attempting to manufacture the newly developed product for commercial usage is sufficiently continuous, as to plaintiff only, to be termed general and habitual.

Looking at this case in its entirety, I am not convinced that plaintiff's experiments with Plastofil followed by plaintiff's order for Plastofil is by itself enough for defendant to be "doing business" in Pennsylvania. Nor is the Easton office and its personnel sufficient.

To these two factors must be added the third fact that plaintiff's only contact and all of its business dealings with defendant were transacted in Pennsylvania through defendant's Easton office. Regardless of the many other facts that I have considered but have not related herein, these three factors combined convince me that defendant's agents in Pennsylvania were authorized to represent it in Pennsylvania in its dealings with plaintiff, that all of defendant's business with plaintiff was transacted by or through these agents, and that this business was sufficient in quantity and quality.

Thus, under all the facts of this case, defendant is "doing business" in Pennsylvania insofar as this plaintiff is concerned.

The remaining question to be determined is whether the Pennsylvania law exercising personal jurisdiction over this foreign corporate defendant violates the due process clause or the interstate commerce clause of the federal constitution, U.S.Const. Art. I, § 8, cl. 3; U.S.Const. Amend. XIV. Pulson v. American Rolling Mill Co., supra.

Since this question has not been raised by the parties and since the Pennsylvania law is much stricter than the federal

2. Act of June 8, 1911, P.L. 710, § 4, as amended, by the Act of April 22, 1915, P.L. 170, § 1, 15 P.S. § 3144.

794

law, compare Law v. Atlantic Coast Line R. Co., supra, with Moore v. Atlantic Coast Line R. Co., D.C., 98 F.Supp. 375, I deem the relative strictness of the Pennsylvania law sufficient to hold that the Pennsylvania law does not violate either the due process clause or the interstate commerce clause of the federal constitution.

Accordingly, defendant is amenable to service of process since it is "doing business" in Pennsylvania, and defendant's motion to dismiss the complaint is hereby denied.