G. E. M., INC. *v.* PLOUGH, INC.
[No. 273, September Term, 1961.]

*Decided May 2, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, HORNEY and MARBURY, JJ.

*Joseph I. Nellis* and *Stanley B. Frosh* for appellant.

*Ward B. Coe, Jr.,* with whom were *Anderson, Barnes, Coe
& King* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree enjoining the appellant from
selling certain manufactured proprietary articles (chiefly drug
products) at prices less than those established by the appellee
under Fair Trade contracts with retailers in this State, other
than the appellant.

The first point raised is that the bill should have been dis-
missed because the appellee is a foreign corporation, and since
it is conceded that it has neither qualified nor registered in
Maryland under Code (1957), Art. 23, sec. 90, it is contended
that the action cannot be maintained under Art. 23, sec. 91
(c). The statutory bar was raised as an affirmative defense.
The latter subsection provides:

> "(c) *When suit may be maintained by corpora-
> tion.*—No suit shall be maintained in any court of
> this State by any such foreign corporation * * * if
> such foreign corporation is doing or has done intra-
> state or interstate or foreign business in this State
> without having complied with the requirements of
> § 90 of this article, until such foreign corporation or
> the person claiming under it has shown to the satis-
> faction of the court
> (1) That such foreign corporation * * * has com-
> plied with the requirements of § 90 of this article, or

(2) That neither such foreign corporation nor any foreign corporation successor thereto is continuing to do intrastate or interstate or foreign business in this State, and

(3) That such foreign corporation * * * has paid to the Commission the penalty provided for in subsection (d) hereof."

Section 91 (d) provides a penalty of $200 for failure to qualify or register as required under section 90.

It seems to us to be too clear for extended argument that the words "doing * * * intrastate or interstate or foreign business in this State", first enacted by chapter 504 of the Acts of 1937, are no broader than the words "doing business" contained in Code (1924), Art. 23, sec. 119. This was the construction by the Attorney General in 22 Opinions of the Attorney General 256 and 262, and subsequent legislative amendments and reenactments have not altered the key language or the gloss put upon it. Whether a foreign corporation may maintain a suit without qualifying or registering clearly depends upon whether it is "doing business" as defined in the cases on the subject. We turn to the facts developed in the instant case.

The appellee is a Delaware corporation with its principal place of business in Memphis, Tennessee. Mr. Kimpel, an officer of Plough, was called by the appellant as the only witness on the "doing business" question. His testimony may be summarized as follows:

Plough has no property, warehouse, office or other address in Maryland of any kind and is not listed in any telephone book. Plough products flow into Maryland by sales in interstate commerce by common carrier from its main office and plant in Memphis and occasionally from Hackensack, New Jersey, where it has a warehouse, direct to Maryland wholesalers, chain stores, and retailers. Plough has two sales forces, one known as the wholesale sales force which solicits jobbers, wholesale drug and grocery firms, and large chains, the other, the retail sales force which solicits retailers and smaller chains. Plough has one salesman of the retail force who re-

sides in Baltimore. He covers Maryland, Delaware and a part of Pennsylvania. Two salesmen of the wholesale force also work partly in Maryland. One resides in Wynnewood, Pennsylvania, and the other in Falls Church, Virginia. Between them they cover Pennsylvania, Virginia, West Virginia and Delaware.

The salesmen operate from their homes. They are paid entirely on a commission basis from Memphis. They pay all of their expenses, including the cost of operating and maintaining their own automobiles. None of these expenses is reimbursed by Plough. The salesmen have no authority to make sales or accept orders, but solicit only. All orders are subject to acceptance or rejection at the main office in Memphis and occasionally in emergency cases at the warehouse in Hackensack. Orders have in fact been rejected from time to time for (a) bad credit, (b) refusal to comply with Fair Trade prices, and (c) for other reasons, including cases where Plough has found the customer to be unreasonable to deal with.

The salesmen are furnished with sample kits which they purchase from the company and for which they receive credit on termination of employment. In connection with solicitation they display these samples to prospective customers but do not give away any samples or otherwise deliver any merchandise. They engage in no promotion of intrastate sales, i.e. sales from Maryland wholesalers to Maryland retailers. Occasionally, in connection with the solicitation of orders they distribute to Plough's retail customers, free of charge, streamers and other point-of-sale advertising material for the customer's use. They are instructed to observe the pricing of retail customers, report Fair Trade violations to Memphis, and, if the occasion arises, to discuss the matter with the customer in an effort to obtain voluntary compliance with Fair Trade. Generally, a very small part of the salesman's time, "one per cent probably", is spent on Fair Trade matters. The percentage is still less in Maryland, where Plough retains an attorney and employs a detective agency to shop for Fair Trade violations. Salesmen are notified of delinquent accounts and would discuss such delinquency in connection with a new order, but they are not authorized to accept any payment from a customer. Plough also

has a policy of allowing a percentage discount, based on the volume of business, for participating in certain advertising programs. For this purpose, Plough's sales manager sometimes comes to Maryland to discuss the matter with a customer.

Aside from the activities mentioned, Plough does nothing in Maryland. The salesmen never deliver goods, even in an emergency. They have no discretion in negotiating prices. Plough maintains no showroom or other place for the display of its products in Maryland. It has no franchise agreements with any wholesalers or distributors. The salesmen are not authorized to list Plough's name in connection with their own in the telephone book, or to use Plough's name on calling cards. No withholding taxes on the salesmen's commissions are paid by Plough to the State of Maryland. Plough has some ten or twelve Fair Trade contracts in force with Maryland retailers.

The question is whether these activities measure up to "doing business". We think not. It has long been recognized that, for the purpose of rendering itself amenable to suit, a foreign corporation soliciting orders for goods to be shipped into the State is not doing business, if the agents soliciting the orders have no authority beyond solicitation. *People's Tobacco Co. v. Am. Tobacco Co.*, 246 U. S. 79. Cf. *International Harvester v. Kentucky*, 234 U. S. 579. The authorities on the point were carefully reviewed in the recent case of *Feldman v. Thew Shovel Co.*, 214 Md. 387, 393 *et seq.* While in that case this Court was construing Code (1957), Art. 23, sec. 88 (a) the key language is the same, and we regard that case as controlling. The Court had no difficulty in distinguishing *Thomas v. Hudson Sales Corp.*, 204 Md. 450, and *Compania De Astral, S. A. v. Boston Metals Co.*, 205 Md. 237, nor have we.

The only activities in the instant case that could be said to exceed solicitation are the occasional dissemination of streamers and like material to Plough's own customers for their own use, and the allowance of a discount for participating in advertising programs. We think these activities are merely incidental to, and directly connected with, the solicitation of interstate sales, and do not meet the test implicit in the statutory language in question. Likewise, we think the activities

in connection with Fair Trade enforcement are not controlling. *Remington Arms Co. v. Lechmere Tire & Sales Co.,* 158 N. E. 2d 134 (Mass.). See also *U. S. Time Corp. v. Grand Union Co.,* 165 A. 2d 310 (N. J.), distinguishing *Eli Lilly & Co. v. Sav-On-Drugs,* 154 A. 2d 650 (N. J.); aff. 158 A. 2d 528; aff. 366 U. S. 276.

Since we reach this conclusion by a construction of the Maryland statute in the light of the decided cases, we do not reach the appellee's contention that to apply the bar to a corporation doing a wholly interstate business would violate the Commerce Clause of the Federal Constitution. See *Eli Lilly & Co. v. Sav-On-Drugs,* 366 U. S. 276, and *International Textbook Co. v. Pigg,* 217 U. S. 91.

The appellant again urges that we strike down the Maryland Fair Trade Act on the ground that the "non-signer" clause is unconstitutional. The point was carefully considered in the recent case of *Home Utilities Co. v. Revere,* 209 Md. 610, citing *Goldsmith v. Mead Johnson & Co.,* 176 Md. 682, which in turn relied upon *Old Dearborn Co. v. Seagram Corp.,* 299 U. S. 183. We adhere to the view there expressed, which we think is still the view taken by a majority of the courts that have considered the question. See the annotation in 60 A.L.R. 2d 420.

The appellant further contends that the appellee has not used reasonable diligence in enforcing its Fair Trade prices. Without summarizing the testimony on the point, we think that Plough's procedures are at least as thorough as those held sufficient in *Gadol v. Dart Drug Corp.,* 222 Md. 372. *Dart Drug Corp. v. Eli Lilly & Co.,* 216 Md. 20, *Donner v. Calvert Distillers Corp.,* 196 Md. 475, and *Hutzler Bros. Co. v. Remington-Putnam Book Co.,* 186 Md. 210.

Finally, we think the injunction was properly extended to cover items other than those as to which a violation was proved, in view of the appellant's letter in which it stated its intention to disregard all of the price limitations imposed.

*Decree affirmed, with costs.*