## WHITE *v.* CATERPILLAR TRACTOR COMPANY

[No. 399, September Term, 1963.]

*Decided June 29, 1964.*

The cause was argued before HENDERSON, HAMMOND, HOR-
NEY and MARBURY, JJ., and ANDERSON, J., Associate Judge
of the Sixth Judicial Circuit, specially assigned.

370

*Samuel D. Hill,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel* and *Clarke* on the brief, for appellant.

*Francis D. Murnaghan, Jr.,* with whom were *Charles W. Gilchrist* and *Venable, Baetjer* and *Howard* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The only question presented by this appeal is whether a foreign corporation was "doing business" in Maryland so as to be amenable to suit in this State under Code (1957), Art. 23, § 92(a).

On October 3, 1962, Henry P. White, the plaintiff-appellant, sued Alban Tractor Company (Alban or dealer), a Maryland corporation, and Caterpillar Tractor Company (Caterpillar or manufacturer), the appellee, alleging a breach of warranty by both defendants in the sale of marine engines manufactured by Caterpillar and sold by Alban to be installed in a yacht constructed for the appellant by a North Carolina boat builder. Caterpillar, pursuant to Maryland Rule 124 c, filed a motion raising preliminary objections for the purpose of moving to dismiss the declaration and to quash service thereof on the ground that the lower court lacked jurisdiction. The appeal is from the order granting the motion.

Caterpillar, a California corporation with its principal offices in Peoria, Illinois, manufactures and sells a variety of tractors, earth moving equipment, diesel engines and replacement parts for all such products to customers in the United States as well as throughout the world. Its sales in this country are primarily to dealers for resale, although a small proportion of its equipment sales are to other equipment manufacturers for resale as a part of their products. Caterpillar, pursuant to the provisions of § 90(a) of Art. 23 permitting registration to do business in Maryland without signifying its consent to be sued here, appointed a resident agent to accept service of process in this State. Alban is the principal dealer in Caterpillar products in Maryland. Its territory encompasses the whole state with the

exception of Garrett and Allegany counties.[1] In 1961 Caterpillar sales to Alban aggregated about $8,000,000, and in 1962 83% of Alban's sales involved Caterpillar equipment and products.

The relationship between Caterpillar and Alban was governed by a dealership agreement which provided in part that Caterpillar products were to be sold to Alban at a discount for resale at the manufacturer's list price; that the dealer would maintain in its places of business an adequate supply of replacement parts as well as mechanical services and facilities, employ an adequate number of salesmen, parts personnel and experienced and competent mechanics, and advertise Caterpillar products (with the manufacturer sharing 50% of the cost thereof) under the name of Alban in suitable advertising media throughout its territory in accordance with a booklet of rules as to the manner in which the advertising was to be conducted, all to the satisfaction of the manufacturer; that the dealer was to show motion films of Caterpillar products to prospective customers, keep a mailing list of owners and prospective customers of Caterpillar equipment, and send advertising literature to them, and keep records of such mailings and furnish such information to the manufacturer on request; that the dealer was to keep complete records and make monthly reports to the manufacturer as to inventory and sales, demonstrations and soliciting, and equipment sold or serviced; that Alban was to furnish semi-annual reports as to its ownership, financial condition and operation; and that the dealer was not an agent of Caterpillar.

A salaried employee of Caterpillar (Donald L. Shook), who was paid a salary plus expenses, resided in Maryland and spent 40% of his working time here as a research engineer. On arriving here, his first activity concerned the testing of a new Caterpillar product—a cargo vehicle called a "goer"—at the Aberdeen Proving Grounds. Thereafter, his duties expanded to observing and supervising field tests of component parts installed on customers' machinery to determine whether such parts were suitable for mass production. He termed his work

---

1. These two counties are in the territory of Beckwith Machinery Company, located at Pittsburgh, Pennsylvania.

for the manufacturer in researching and field testing new products as "a fairly important part of Caterpillar's business." He operated out of his home where Caterpillar customers and the dealer could reach him. Among other things, he visited the dealer two or three times a week to set up tests, observe and assist in whatever way he could, but he did no soliciting in this State.

During 1962 some forty-two other Caterpillar employees came into Maryland on one hundred and fifteen occasions covering more than two hundred and fifty man-days. Most of these employees did not come here to solicit orders, but rather in connection with matters concerning the dealership arrangement between Caterpillar and Alban, including matters of sales promotion and servicing responsibilities. More specifically, the purposes of the many visits were: to get acquainted with Alban personnel; to obtain information for product improvement; to procure performance data on Caterpillar products; to discuss advertising and promotion activities; to gather news release material concerning Caterpillar products; to review Alban's sales efforts; to inspect its data processing operations; to talk about problems involving use of Caterpillar parts; to acquaint operators of Caterpillar equipment with proper operating techniques; and to operate a truck pulling a mobile display.

The issue as to whether or not Caterpillar was doing business in Maryland must be determined from the facts of this particular case, and, of necessity, requires a careful analysis of the business activities conducted by or on behalf of Caterpillar in this State. *Chesapeake Supply & Equipment Co. v. Manitowoc,* 232 Md. 555, 194 A. 2d 624 (1963). Under the facts of this case—even though Caterpillar had no office or other place of business and maintained no bank account, corporate books or records in Maryland, and held no corporate meetings of any sort here—we are of the opinion that Caterpillar was doing business in this State.

We have consistently held that the mere soliciting and obtaining of orders within this State by a foreign corporation does not amount to doing business here. *Chesapeake Supply & Equipment Co. v. Manitowoc, supra; G.E.M., Inc. v. Plough, Inc.,* 228 Md. 484, 180 A. 2d 478 (1962) ; *Feldman v. Thew*

*Shovel Co.,* 214 Md. 387, 135 A. 2d 428 (1957). However, in the case at bar, there are additional factors which, when considered as a whole, clearly indicate that Caterpillar was in fact doing business in Maryland. These include the continuous research and testing activities conducted by the research engineer and others, the regular visits of other employees for various business purposes, and the supervision and control it exercised over Alban in the conduct of the dealership.

Since the testing and researching necessary for the development of new and more competitive products are essential elements of corporate activity and business, *Allentown Record Co., Inc. v. Agrashell, Inc.,* 101 F. Supp. 790 (D.C. Pa. 1951), it is both practical and expedient for a corporation, whose products can best be tested and observed in actual use, to set up so-called field laboratories and conduct its research and tests on the site of customer operations. That is precisely what was done in the instant case. In an effort to determine the practicability of future production of certain of its equipment and parts, Caterpillar sent its research engineer and others into Maryland for that purpose. In so doing it was certainly conducting an important part of its business in this State.

In addition to its research and testing activities, Caterpillar seems to have exercised much the same supervision and control over sales and services as it would have done had Alban been a sales and service branch in this State. In this respect (except that the automobile dealer sold only the products of the motor company) the facts in the instant case are quite analogous to those in *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 105 A. 2d 225 (1954). On the other hand, the *Thew* and *Manitowoc* cases, both *supra,* are clearly distinguishable from the instant case with respect to the exercise of control over the business affairs of the distributor or dealer.

In *Thew,* where the foreign corporation's district sales manager made infrequent visits to see the Maryland distributor, to give "pep talks" to its salesmen, to call on prospective customers with salesmen, and edited such purchase orders as passed through him to the manufacturer, but did not supervise the distributor in any manner or inspect its books or business records, and the distributor sent out the advertising material of

the manufacturer at its own expense and paid the cost of advertising the manufacturer's products in Maryland, the Ohio corporation was held not to be doing business in this State.

Likewise, in *Manitowoc*, where the factual situation was so similar to the circumstances in *Thew* that we deemed it almost impossible to distinguish them, other than to point out that Manitowoc had even less contact with this jurisdiction than did Thew, and the foreign corporation did not inquire into or otherwise concern itself with the business affairs of the distributor other than to keep the distributor "conscious of Manitowoc" and to assist in negotiating an occasional sale through its district sales manager, and to unload and assemble heavy mobile cranes and give instructions as to the operation thereof through two other employees, the Wisconsin corporation was held not to be doing business in Maryland.

But, as is readily apparent, the terms of the dealership agreement in the case at bar reserved to the foreign corporation considerably more control over sales and services than the distributorship agreements in *Thew* and *Manitowoc*. Under the agreement between Caterpillar and Alban, the manfacturer has retained control over many important aspects of the dealer's business with respect to its sales and services, such as the right to inquire into sales, services, inventory, personnel, facilities, operation, finances, ownership, advertising and other promotional activities. When, therefore, this fact is considered in connection with the frequent visits of Caterpillar employees to effectuate its authority over the business affairs of the dealer, we think it is clear that the supervision and control exercised by Caterpillar in this case was as complete as that exercised by Hudson Sales in the *Thomas* case. See also *Kahn v. Maico Co., Inc.,* 216 F. 2d 233 (C.A. 4th 1954) ; *La Porte Heinekamp Motor Co. v. Ford Motor Co.,* 24 F. 2d 861 (D.C. Md. 1928).

We hold that Caterpillar's activity in this State was sufficient to subject it to suit here under § 92(a) of Art. 23. *Thomas v. Hudson Sales Corp., supra.* See also *Johns v. Bay State Abrasive Products Co.,* 89 F. Supp. 654 (D.C. Md. 1950).

> *Judgment reversed and case remanded for further proceedings; appellee to pay the costs.*

HENDERSON, J., filed the following dissenting opinion.

To my mind the activities within this State relied on to distinguish *Manitowoc* and *Thew* are not decisive. Those referred to as research had to do with field studies directed towards future improvements in the product to be manufactured in another state. Since only about two per cent of the product is distributed in Maryland, the effect seems minimal. It is true that the agreement in the instant case was drawn more tightly, but the control exercised was not directed towards sales, but to insure a more detailed accounting to the manufacturer. I think the instant case falls squarely in the pattern of the cases cited. *Thomas v. Hudson Sales* is distinguishable on the ground that the distributor was a wholly-owned subsidiary, and the controls retained related directly towards current sales.

I see no reason why this Court should depart from its established views as to what constitutes doing business, simply because the Supreme Court of the United States has limited the constitutional immunity from suit once afforded to those engaged in commerce between the states.