GILLIAM *v.* MOOG INDUSTRIES, INC.
[No. 300, September Term, 1964.]

108

*Decided May 27, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Hyman Ginsberg*, with whom were *Ginsberg & Ginsberg* on the brief, for appellant.

*Lawrence F. Rodowsky*, with whom were *Frank, Bernstein, Gutberlet & Conaway* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant Gilliam was employed by the appellee, Moog Industries, Inc., under a written contract executed in St. Louis in 1962 as district manager of an area that included Delaware, southern New Jersey, and parts of Pennsylvania, Virginia and Maryland. His contract was terminated and his services dispensed with, he claims wrongly, on July 31, 1963. Four months later Gilliam filed suit against Moog in the Superior Court of Baltimore City for breach of contract, justifying jurisdictional venue by the claim that Moog was a foreign corporation doing

business in Maryland and was, therefore, subject to suit in Maryland under Code (1957), Art. 23, Sec. 92(a). Service was made upon the State Department of Assessments and Taxation as the statutory agent of a foreign corporation doing business in the State without a resident agent, under Code (1957), Art. 23, Sec. 97. Moog moved to quash the writ of summons on the grounds that it did no business in Maryland, the contract sued on was not made in this State and Gilliam at the time of the execution of the contract, was not a resident of Maryland. Judge Carter, on July 9, 1964, quashed the writ, holding that the activities of Moog and its agents in Maryland, including activities designed to stimulate interest in its products and facilitate the placing of orders for them, added up to no more than solicitation of business which did not amount in law to doing business or otherwise subject Moog to suit in Maryland. We think Judge Carter took the correct view of Moog's activities and was right in not finding it to be subject to suit here.

Moog is a Missouri corporation engaged in the business of manufacturing thousands of different automobile replacement parts which it sells to independent warehouse distributors (two in Maryland) who in turn sell them through the efforts of their own sales forces to jobbers. The jobbers sell to the installers, such as service stations, repair shops and fleet operators. Moog has no place of business, no office, no property of any kind, no bank account, and no telephone listing in Maryland. It holds no corporate meetings and pays no taxes in Maryland. Moog does not advertise locally in the State, using only trade publications aimed at the automotive industry throughout the country.

Gilliam, as district manager of Moog in this area, promoted the sale of its products by calling on warehouse distributors and jobbers and the customers of jobbers. He conducted "clinics" for installers to sell the idea of the superiority of Moog's output, particularly new products. He had an assistant or "missionary man," whose duties were similar. Neither the manager nor the missionary man had any authority to accept orders in Maryland, this, for credit reasons, being done only at the head office in St. Louis.

The present case is a fact brother of *Feldman v. Thew Shovel*

110

*Co.*, 214 Md. 387; *G. E. M., Inc. v. Plough, Inc.*, 228 Md. 484; and *Chesapeake Supply & Equipment Co. v. Manitowoc*, 232 Md. 555, in each of which the defendant corporation was held not to be doing business in Maryland, and does not have the additional features which in *Thomas v. Hudson Sales Corp.*, 204 Md. 450; and *White v. Caterpillar Tractor*, 235 Md. 368, made the holdings go the other way.

The appellant argued earnestly to us, in the brief and orally, that even if Moog was not "doing business" in Maryland within the judicially declared meaning of that phrase, it was subject to suit here under the provisions of Ch. 95 of the Laws of 1964, effective June 1, 1964, which added Secs. 94 to 100, inclusive, to Art. 75 of the Code under the new sub-title "Bases of Personal Jurisdiction Over Persons Outside This State" to provide (Sec. 96(a)) that a court may exercise personal jurisdiction over a person or corporation who acts, directly or by an agent, as to a cause of action arising from the person's:

"(1) transacting any business in this State;

(2) contracting to supply services in this State;

(3) causing tortious injury in this State by an act or omission in this State;

(4) causing tortious injury in this State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in this State or derives substantial revenue from food or services used or consumed in this State;

(5) having an interest in, using, or possessing real property in this State; or

(6) contracting to insure any person, property, or risk located within this State at the time of contracting."

It further provides (Sec. 97) that when the exercise of personal jurisdiction is authorized by "this sub-title" service may be made outside the State, and that (Sec. 100) service may be made, in addition to any other method allowed by law, "* * * in accordance with Chapter 100 of the Maryland Rules of Pro-

cedure or in such other manner as may hereafter be established by rule of the Court of Appeals of Maryland."

It seems clear that the purpose of the Legislature in enacting these new provisions was to give the courts of the State personal jurisdiction over all out of state persons and corporations which constitutionally could be reached as having had sufficient Maryland contacts, under the jurisdictional yardstick established by the Supreme Court in cases such as *International Shoe Co. v. Washington,* 326 U. S. 310, 90 L. Ed. 95; *McGee v. International Life Ins. Co.,* 355 U. S. 220, 2 L. Ed 2d 223; and *Hanson v. Denckla,* 357 U. S. 235, 2 L. Ed. 2d 1283.

It is to be noted first that service in the present case was upon the State Department of Assessments and Taxation, as is authorized by Code (1957), Art. 23, Secs. 96(d) and 97, in suits against foreign corporations doing business in the State which do not have a resident agent, and that no attempt was made to effect service pursuant to Chapter 100 of the Maryland Rules (no other rule on the subject has been promulgated by this Court) and, second, that the cause of action sued on had accrued before the effective date of Ch. 95 of the Laws of 1964.

The cases and the writers have differed as to whether statutes similar to those enacted by Ch. 95 of the Laws of 1964, which have enlarged the bases for personal jurisdiction over out of state individuals and corporations, are to be given retrospective or prospective operation, both on the question of the effectiveness of service of process prior to the effective date of such statutes and on the merits when the cause of action accrued before the effective date. See Note, *Retroactive Expansion of State Court Jurisdiction over Persons,* 63 Col. L. Rev. 1105; and compare Restatement, Second, *Conflict of Laws,* Secs. 84 Comment e, 84a Comment d, 85 Comment d (Tentative Draft No. 3, 1956) ; and *McGee v. International Life Ins. Co., supra.* See *Simonson v. International Bank,* 225 N. Y. S. 2d 392; affirmed, 200 N. E. 2d 427; *Nevins v. Revlon, Inc.* (Super. Ct. Conn.), 182 A. 2d 634; *Focht v. American Casualty Company* (Ct. App. Ga.), 118 S. E. 2d 737; *Johnson v. Baldwin* (S. C.), 53 S. E. 2d 785.

We do not reach the questions of the applicability and effect

of the 1964 statute. The declaration was filed in November 1963. The motion to quash the writ of summons was filed in December 1963. Testimony was taken on June 5, 1964, and briefs then were submitted. Judge Carter ordered the writ quashed on July 9. The parties did not rely on nor refer to Ch. 95 of the Laws of 1964 until July 29, when the question of its applicability and effect was raised for the first time, the appellant, the plaintiff below, then moving that the court exercise its revisory power and on the basis of the 1964 Act set aside the quashing of the writ of summons. On August 5 the plaintiff below filed his notice of appeal to this Court. On August 13 Judge Carter overruled the motion to set aside the quashing of the writ of summons. We think he had no power to do so since, before he acted, the plaintiff's notice of appeal had been filed, and the movant had not elected to dismiss the appeal and rely on the motion. *Visnich v. Washington Suburban Sanitary Commission*, 226 Md. 589. There we said (p. 590) :

> "We think the court lacked authority to entertain the motion under the circumstances.
>
> "In *Avirett v. State,* 76 Md. 510, it was stated that if upon the entry of an appeal a trial court is without authority to hear a motion to strike out a judgment, then, instead of the appeal having been waived or abandoned by a hearing of the motion, the motion was prematurely and improvidently heard. In other cases, such as *United Rys. Co. v. Corbin,* 109 Md. 52, and *Giles v. DiRobbio,* 186 Md. 258, it was held that a trial court lacked authority to hear a motion to strike out a judgment if an appeal had been entered and was still pending when the motion came on for hearing. And in the *Tiller* case, *supra* [205 Md. 14] in which the appeal had been dismissed before the motion to strike out the judgment came on for hearing, though stating that the mere filing of an appeal did not strip the trial court of its revisory power in a proper case, we confirmed our prior holdings to the effect that the trial court lacks authority to entertain a motion to revise a judgment if an appeal is pending, and further

stated that unless the appeal is dismissed when the motion to revise the judgment appealed from comes on for hearing, the appellant must elect between his motion and his appeal."

See also *Tiller v. Elfenbein*, 205 Md. 14.

Whether Gilliam had a cause of action enforceable in Maryland under Ch. 95 of the Laws of 1964 was a question not properly presented to and decided by the trial court and is not before us for review. Md. Rule 885. The judgment appealed from will be affirmed without prejudice to the appellant to file a new suit that claims under the provisions of Code (1964 Cum. Supp.), Art. 75, Secs. 94 to 100, inclusive. We neither express nor intimate an opinion as to whether those sections will or will not be of aid and comfort to the appellant in such a suit.

> *Judgment affirmed, with costs, without prejudice to further action by the appellant, if he so elects, against the appellee in accordance with the opinion herein.*