**CHAMPION SPARK PLUG COMPANY,**
a body corporate of the State of
Delaware, Appellant,

v.

**T. G. STORES, INC.**, a body corporate of
the State of Maryland, Appellee.

No. 10084.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 9, 1965.

Decided Jan. 26, 1966.

William L. Marbury and Morton P. Fisher, Jr., Baltimore, Md. (Jesse Slingluff, Baltimore, Md., on brief), for appellant.

Lawrence B. Coshnear and A. David Gomborov, Baltimore, Md. (Silbert & Gomborov, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

The Champion Spark Plug Company, a Delaware corporation, appeals from an order of the district court dismissing with prejudice its suit to restrain the defendant, T. G. Stores, Inc., of Maryland, a discount house, from violating its fair trade contracts entered into under authority of the Maryland Fair Trade Act. Maryland Code of Public General Laws, Article 83, section 102 et sequi, 1957 Edition. The district court dismissed the action on two grounds: (1) that the plaintiff was barred from maintaining the suit by Article 23, section 91(c), of the Maryland Code because it was engaged in intrastate business without having qualified to do such business as required by Article 23, section 90; and (2) that the contracts contained

discriminatory, indefinite and ill defined classifications.

The district court reached the conclusion that the plaintiff was engaged in intrastate business after a careful analysis of the Maryland statute and the decisions of the Maryland Court of Appeals outstanding at the time of its decision. Since that time the Maryland court has decided Gilliam v. Moog, 239 Md. 107, 210 A.2d 390 (1965), a case so close to this one on its facts that we think it determinative of the issue here. It is true, as the defendant argues, that the decision of the Supreme Court in Eli Lilly & Co. v. Sav-on-Drugs, Inc., 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), would permit Maryland broader jurisdictional limits had it chosen to exercise its constitutional rights to the maximum, but it was not required to so do, and in Moog a more restrictive view of what constitutes intrastate business was taken.

In Moog, as here, the company stimulated intrastate sales. It had "missionary men" who "promoted the sale of its products by calling on * * * jobbers and the customers of jobbers. * * *. [And] conducted 'clinics' for installers to sell the idea of the superiority of Moog's output." Id., 210 A.2d at 391. Other than stimulating interest and physically carrying the order from the Maryland installer to the Maryland jobber, Moog had no part in the intrastate sale. The Maryland court found Moog not to be engaged in intrastate commerce. On a similar pattern of sales stimulation we must also find Champion not engaged in intrastate commerce in Maryland. Champion makes no sales directly to the firms it solicits. It has no office, telephone listing, or warehouse in Maryland. The fact that the missionary men live in Maryland, that Champion pays their expenses on the road (but not their office expense in their homes), and that Champion leases their automobiles does not distinguish this case from *Moog*.

We think the district court was entirely correct in its decision on the merits of the case. The fair trade contract which Champion seeks to enforce contains a reduced minimum price for sales to "fleet operators." We agree with the district court finding that such an exemption is too indefinite to allow enforcement of the contract. The injunction sought would expose the defendant to the possibility of being guilty of an unwitting violation of the injunction. Though the plaintiff contends that "fleet" has a recognized meaning in the automobile industry, Champion itself changed its contractual definition between 1961 and 1963. In 1961 the contract stated that "the term 'Fleet Operator' refers to an account which has a suitably equipped workshop, having facilities for the repair and maintenance of motor vehicles and engines, and employing at least one qualified mechanic devoting his full time to servicing and repairing its vehicles and engines." In 1963 the contract required only that the spark plugs be "for use in its own [the fleet operator's] equipment only and not for resale." Fleets were classified according to the number of vehicles owned by the operator beginning with less than twenty. It was conceded that one vehicle could constitute a fleet under the contract language. The plaintiff's own Assistant Sales Manager testified that a fleet operator has "at least a part time mechanic to service his vehicles," thus some accounts classified as fleets by Champion's own employee would not qualify under the 1961 contract which required a *full-time* mechanic. It is not contended that throughout the trade the "accepted" meaning of fleet operator changed between 1961 and 1963.

Even if the definition of fleet operator were known to persons in the automotive trade it could still be ambiguous to the retail seller whom the plaintiff seeks to enjoin. There has been no showing that a large multipurpose discount house, such as the defendant, can reasonably be expected to be able to interpret the contract. Under these circumstances to enjoin the defendant would place him in

serious jeopardy of unintentionally violating the injunction.

The decision of the district court is affirmed for the reasons herein stated.

Affirmed.