## PREMIER INDUSTRIAL CORPORATION
### v.
### Israel N. NECHAMKIN.
### Civ. No. HM75–1306.

United States District Court,
D. Maryland.
Nov. 14, 1975.

Michael Esher Yaggy, Baltimore, Md., for plaintiff.

John J. Ghingher, Jr., and Stanley J. Neuhauser, Baltimore, Md., for defendant.

HERBERT F. MURRAY, District Judge.

The plaintiff corporation in this case has brought suit to enforce a non-competition covenant contained in a contract with a former employee of the corporation. The case is presently before the Court on defendant's Motion to Dismiss. The defendant alleges that the plaintiff corporation is a foreign corporation doing intrastate business within the

State of Maryland, without having registered or qualified with the Department of Taxation and Assessments in accordance with §§ 7–202 and 203, of the Corporations and Associations Article, Annotated Code of Maryland. As a consequence, the defendant argues that § 7–301 of the same article bars the plaintiff corporation from maintaining suit in this Court and in any other court of the State.

The plaintiff corporation argues that its activities in the State of Maryland are not such as require it to qualify under the applicable law, nor is there any evidence which suggests otherwise. Consequently, it is argued, the fact that it is not registered or qualified does not bar this suit.

The proper starting place for the analysis of the issue presented is the statutory provisions relating to the regulation of foreign corporations. References will be to the Corporations and Associations Article of the Annotated Code of Maryland unless otherwise noted.

Section 7–301 provides:

If a foreign corporation is doing or has done any intrastate, interstate or foreign business in this State without complying with the requirements of Subtitle 2 of this title, neither the corporation nor any person claiming under it may maintain a suit in any court of this State unless it shows to the satisfaction of the court that:

(1) The foreign corporation or person claiming under it has paid the penalty specified in § 7–302 of this subtitle; and

(2) Either:

(i) The foreign corporation . . . has complied with the requirements of Subtitle 2 of this title; or

(ii) The foreign corporation . . . [is] no longer doing intrastate, interstate, or foreign business in this State.

The term "foreign corporation" is defined in § 1–101(*l*) as:

a corporation, association, or joint-stock company organized under the laws of the United States, another state of the United States, a territory, possession, or district of the United States, or a foreign country.

Subtitle 2, referred to in § 7–301 above, sets out the manner by which foreign corporations must register and qualify with the Department of Taxation and Assessments prior to the doing of any intrastate, interstate, or foreign business.

The parties are in agreement that Premier Industrial Corporation (hereinafter referred to as Premier) is a foreign corporation, organized under the laws of Ohio. Premier's right to conduct interstate or foreign business in Maryland has not been challenged by the defendant. It is also agreed that only one of Premier's divisions or subsidiaries engaged in selling products is registered and qualified to do business in Maryland. Thus the only question before the Court is whether Premier is "doing intrastate business" in Maryland within the meaning of § 7–301, and if so, whether the failure to register and qualify would bar this suit. In the instant case, the burden of proof is on the defendant on this issue. *Rudden v. Gro-Plant Industries*, 269 Md. 173, 176, 304 A.2d 812 (1973).

Premier operates as a conglomerate, with the actual business and sales of the company being handled through various divisions, six of which are active in Maryland.[1] The divisions sell and distribute a wide variety of industrial and

1. Those divisions are Premier Autoware Co.; Premier Fastener, Co., (of which the defendant was a district manager and a salaried employee); Certanium Alloys and Research Co.; Rotanium Products Co.; J. I. Holcomb Manufacturing Co.; and Kent Industries, Inc. D–A Lubricant Co. is a subsidiary of Premier and is duly registered and qualified to do intrastate business in Maryland; Newark Electronics is a division of D–A Lubricant Co.

automotive maintenance products to customers throughout the United States and Canada. The market is divided into geographical territories, and each territory is assigned to an independent sales agent who is usually given the exclusive responsibility for sales in his area.

None of Premier's divisions selling their products in Maryland own any property, maintain any inventory, have any office, place of business, or warehouse, maintain any bank account, advertise locally, or carry any telephone listing in Maryland.[2] Premier products sold to Maryland customers are shipped directly to those customers from warehouses in Atlanta, Georgia, Cleveland, Ohio or Dayton, New Jersey. Premier's subsidiary, D. A. Lubricant, Inc., rents certain property in Maryland, but is duly qualified and registered to do intrastate business in Maryland.

The gross sales of the six divisions in Maryland amount to approximately $500,000 annually, and Premier pays sales tax on those transactions as required by Rule 64 of the Maryland Retail Sales and Use Tax Regulations.

Sales within the state are solicited by a number of independent sales agents operating within each division. Premier is not bound to accept any order obtained by any independent agent but reserves the right at offices outside of Maryland to refuse to accept orders submitted by its independent sales agents. If Premier elects to accept an order, then it is filled and shipped by Premier from outside the State directly to the customer. Only at that time will Premier credit the sales agent with a commission which is the sole means of compensation. The agents have no authority to assume or create any obligations

whatsoever on behalf of Premier or any of its divisions. The agents do not make any collections for Premier or its divisions and are prohibited from endorsing any commercial paper belonging to Premier or its divisions or from maintaining any bank account in the name of Premier or any of its divisions. Premier prohibits the use of its trade name by agents except in connection with the sales of products shipped by Premier to the customer purchasing such products. Premier does not require the sales agents to provide services to the customers, and no written reports are required other than the record of calls and sales. All of the expenses of the operation of the independent sales agents' office and activities are borne by the independent sales agents and they are solely responsible for the payment thereof. The agents are free to sell non-competitive lines of other companies. Out of the fifteen independent agents currently soliciting sales for the divisions of Premier, at least part-time, in Maryland, twelve reside in Maryland. The relationship of these agents to Premier as being that of "independent contractors" is not being challenged by the defendant in this case.

Out of the six divisions selling products in Maryland, four have "district managers" who are responsible for sales and supervision of sales within Maryland as well as in other territories.[3] District managers are salaried employees of Premier. Depending on the level to which the manager has risen, he spends proportionately more of his time involved in sales supervision, and less in solicitation. When he is acting in his supervisory capacity, a manager is compensated on a per diem basis. When he

2. Agents may, at their option and expense, list the name of the Premier division for which they solicit sales after their own name in a telephone directory. Premier does not pay for such listings. The defendant states that one of the agents for the J. I. Holcomb Mfg. Co. has the name of that division listed after his own in the Baltimore City telephone directory.

3. These include defendant Nechamkin, who was the district manager of Premier Fastener and a resident of Maryland; Mr. Daugherty, district manager of Kent Industries, Inc., also a resident of Maryland; Mr. LaPrade, district manager of Premier Autoware Co., a resident of Maryland; and Mr. LaRue, a "manager in training", who resides in Pennsylvania.

is acting as an agent, his compensation is based strictly on commission. The manager, like the agents, has no authority to accept orders or to bind the corporation in any manner. Premier does not require the managers to keep records or to engage in any type of collection work. The primary duties of a manager are to supervise the independent agents and take general responsibility for the management of the sales activities of Premier within Maryland and the other territories under his jurisdiction. With respect to supervision, such duties include participating in the recruiting, hiring and training of agents as well as advising agents on sales promotion. Approximately twice a year, district managers hold promotional sales meetings, at which independent sales agents, district managers, and in some instances, representatives of Premier from the zone or home office, would be in attendance. The expenses for these meetings would be paid by Premier. Such meetings were sometimes held in Maryland, but not as a matter of regular practice.

In determining whether Premier is "doing intrastate business", this Court is of course bound by the authoritative interpretations by the Maryland Court of Appeals of § 7–301 and its predecessors.[4] *Shealy v. Challenger Manufacturing Co.*, 304 F.2d 102, 104 (4th Cir. 1962). The Court is also aided in the interpretation of the phrase by a partial statutory definition.[5]

■ The determination of whether or not a foreign corporation is "doing in-

trastate business" in Maryland for the purposes of registration and qualification "requires careful consideration of the nature and extent of the business activities conducted by or on behalf of the foreign corporation in the forum state." *Chesapeake Supply and Equipment Company v. Manitowoc Engineering Corp.*, 232 Md. 555, 562, 194 A.2d 624, 628 (1963). Where the only activity of the foreign corporation within the state has been the "mere solicitation" of sales and orders through independent agents lacking authority to bind the corporation, the Court of Appeals has consistently held that such activity does not constitute "doing intrastate business". *Rudden v. Gro-Plant Industries*, 269 Md. 173, 304 A.2d 812 (1973) (dictum); *Gilliam v. Moog Industries, Inc.*, 239 Md. 107, 210 A.2d 390 (1965); *Chesapeake Supply & Equipment Co. v. Manitowoc Engineering Corp.*, 232 Md. 555, 194 A.2d 624 (1963); *G. E. M., Inc. v. Plough, Inc.*, 228 Md. 484, 180 A.2d 478 (1962); *Feldman v. Thew Shovel Co.*, 214 Md. 387, 135 A.2d 428 (1957); *W. J. Dickey v. State Tax Commission*, 212 Md. 607, 131 A.2d 277 (1957). *See also Champion Spark Plug Co. v. T. G. Stores, Inc.*, 356 F.2d 462 (4th Cir. 1966).

Perhaps the outer limits of the "mere solicitation" doctrine were reached in *Gilliam v. Moog Industries, Inc., supra*, on facts very similar to those of the instant case. The defendant in that case was a foreign corporation engaged in the manufacture and sale of auto replacement parts which were sold to inde-

---

4. Annotated Code (1957), Art. 23, § 91 (replaced by current provision in 1975, ch. 311, § 2); Annotated Code (1951) Article 23, § 88; Annotated Code (1924), Art. 23, § 119.

5. Section 7–103 provides:
  In addition to any other activities which may not constitute doing intrastate business in this State, for the purposes of this article, the following activities of a foreign corporation do not constitute doing intrastate business in this State:
  (1) Maintaining, defending, or settling an action, suit, claim, dispute, or administrative or arbitration proceeding;

  (2) Holding meetings of its directors or stockholders or carrying on other activities which concern its internal affairs;
  (3) Maintaining bank accounts;
  (4) Maintaining offices or agencies for the transfer, exchange, and registration of its securities;
  (5) Appointing and maintaining trustees or depositories with respect to its securities;
  (6) Transacting business exclusively in interstate or foreign commerce; and
  (7) Conducting an isolated transaction not in the course of a number of similar transactions.

pendent warehouse distributors, two of which were located in Maryland, who in turn sold them through their own sales forces to jobbers. The jobbers, in turn, sold to installers. The plaintiff had been the district manager for the defendant and was bringing an action for alleged breach of an employment contract. The question before the court was whether the foreign corporation was doing business so as to be subject to suit in Maryland under Annotated Code (1957), Art. 23, Sec. 92(a).[6] The foreign corporation had no office, place of business, property, or telephone directory listing in Maryland; it maintained no bank account in the state, did not advertise locally, and paid no taxes in Maryland. As the corporation's district manager, the plaintiff promoted the sales of the company's products by visiting warehouse distributors, jobbers and installers, conducting "clinics" for garage and repair shops and soliciting orders to be accepted or rejected out of state. The Court held that the case was a "fact brother" to previous cases in which it had held that such activities constituted "mere solicitation", and held that the corporation was not "doing intrastate business".

Where the activities of a foreign corporation within Maryland consist of "solicitation plus" other activities unconnected with the solicitation of sales, however, the Court of Appeals has held that the foreign corporation is "doing intrastate business". *See Feldman v. Thew Shovel Co.*, 214 Md. 387, 394, 135 A.2d 428 (1957). Thus, cases have held, for example, that where a foreign corporation maintains a substantial inventory in the State, *Becker v. General Motors Corp.*, 167 F.Supp. 164 (D.Md.1958), or where the corporation conducts research and field tests of its products in the state, *White v. Caterpillar Tractor Co.*, 235 Md. 368, 201 A.2d 856 (1964), the foreign corporation is "doing intrastate business" so as to be subject to suit in the state. A second group of cases has recognized the "plus" in the extensive control exercised by a foreign corporation over the local distributor, holding that the distributor is in effect an agent of the corporation. *See White v. Caterpillar Tractor Co., supra,* and *Thomas v. Hudson Sales Co.*, 204 Md. 450, 105 A.2d 225 (1953).

The defendant in the present case maintains that the "plus" is apparent in a number of Premier's activities in Maryland. First, the defendant seems to argue that the extensive "presence" of the corporation in Maryland, as evidenced by the amount of sales, the number of divisions or subsidiaries acting in Maryland, and the number of employees and agents selling in Maryland, constitutes in and of itself "intrastate business".

While it is perfectly clear that Premier's sales in Maryland are substantial, and that it has agents and employees actively promoting those sales, such facts, by themselves, do not constitute more than solicitation of sales in interstate business. The Maryland courts have no-

---

6. For the purposes of this case, it need only be noted that, prior to the enactment of Maryland's Long-Arm statute (§ 6–103, Courts and Judicial Proceedings Article, Annotated Code [1975]) in 1964, cases interpreting the phrase "doing intrastate business" were concerned both with obtaining *in personam* jurisdiction over a foreign corporation, and with the registration and qualification of a foreign corporation. The analysis was the same for either purpose. *See*, for example, *G. E. M., Inc. v. Plough, Inc.*, 228 Md. 484, 488, 180 A.2d 478 (1961).

The more recent Maryland cases extending *in personam* jurisdiction to the limits of the Due Process Clause under the authority of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) would indicate that "transacting business" under the Long-Arm is not congruent with doing business" for the purposes of qualification and registration. It is not necessary to reach this issue in the present case, as the parties have relied on the older cases and do not present the issue to the Court. The Court has accordingly rested its analysis on the older cases construing "doing intrastate business" for both purposes.

where developed an exception to the "mere solicitation" rule which states that the extent of the solicitation is a factor to be considered. Indeed, such a doctrine, where the solicitation is entirely in interstate commerce, could be subject to close scrutiny before a federal court would apply it. *Cf. Szantay v. Beech Aircraft*, 349 F.2d 60 (4th Cir. 1965). The fact that three of the district managers responsible for the territory including Maryland are residents of Maryland is not dispositive in light of the *Champion Spark Plug Co.* case, *supra*, in which Champion employed six "missionary men" with duties similar to the district manager in the instant case, all of whom resided in Maryland.

Nor is the fact that twelve independent agents residing in Maryland receive commissions on sales of Premier products a controlling factor in light of the undisputed independence which the agents enjoy vis-a-vis Premier. The fact that district managers for the various divisions of Premier have held infrequent sales promotional meetings in Maryland, for agents, district managers, and on some occasions, representatives from Premier, and that Premier paid the expenses of such meetings, cannot constitute the "doing of intrastate business" in the light of the cases holding similar activities to be merely connected with the supervision of solicitation. *See Gilliam v. Moog*, 239 Md. at 109, 210 A. 2d 390, *Champion Spark Plug*, 239 F. Supp. at 944–945, and 356 F.2d at 463. The simple fact is that the activities of the agents and employees which the defendant seeks to have branded as "doing intrastate business" have all been considered by the Court of Appeals of Maryland in the cases previously cited and been found *not* to constitute doing intrastate business. *See*, in particular, *Gilliam v. Moog, supra, G. E. M., Inc. v. Plough, Inc., supra*, and *Feldman v. Thew Shovel, supra*. The activity seems to be little more than that described by the Court of Appeals in *Thomas v. Hudson Sales Co.*, 204 Md. 450 at 458, 105

A.2d 225, 228, as activities in which a foreign corporation might indulge without being subject to the state's jurisdiction:

. . . A foreign corporation which has its principal business in another state, sells its products to distributors outside of that state, and the products are shipped f.o.b. with drafts attached. A district superintendent is employed whose territory includes foreign states. He visits distributors and dealers and advises them how to sell the products, how to keep up their stock of goods, and selects new dealers subject to the approval of the company. All contracts are executed by an officer of the corporation outside of the foreign state, the district superintendent having no authority to finally ratify any contracts.

The defendant argues that at least some contracts for the sale of Premier's products are made in Maryland. Mr. McGorray, Assistant Vice-President of Premier, testified in his deposition (p. 86–88) that when a request from a Maryland customer for a quotation comes directly to a zone office, the zone office prepares the quotation and sends it back to Maryland, to the customer, with a copy to the agent. McGorray stated that the customer then accepts the quote or rejects it. The defendant argues from this testimony that a contract is made when the customer accepts the quotation of prices. The argument is undercut by McGorray's further testimony that all orders are subject to final acceptance or rejection at the zone office (p. 95). At the hearing on this matter, McGorray's testimony was offered which would have shown that this included quotations. In other words, Premier responds, there is no difference between the situation where the agent supplies the price out of the price catalog and where the zone office supplies the price out of the price catalog—in either case, a subsequent order must be filed, and that order is subject to acceptance or rejection outside of the State. Absent a

showing that a quotation was intended by the parties to result in a binding contract—a showing which seems difficult to make in light of Premier's practice of requiring orders—a communication from the zone office containing information from the same price list possessed by all agents, to a Maryland customer interested in purchasing Premier's products, does not constitute a binding contract. *Cf.* 3 Williston § 27 and cases discussed therein.

The defendant argues that the fact that Premier pays sales tax on certain sales within the State constitutes an implied "admission" that it is doing business in the State. Rule 64 of the Rules and Regulations issued under the Retail Sales and Use Tax Acts provides, in pertinent part:

> If goods are purchased for use, storage, or consumption in this State, the sales tax will apply, if, based upon all circumstances in the case it may fairly be said that the *sale* was made in Maryland, irrespective of the fact that the goods were . . . shipped into this State from points outside thereof pursuant to the contract of sale.

> In those cases in which goods are shipped into this State pursuant to a contract of sale, *the sale will be considered to be made in this State if*:

> (a) *The contract of sale is entered into* either *conditionally* or unconditionally *in this State* by or *on account of a non-resident seller who* has a place of business from which sales are made or a sales office, or *is represented by a distributor who has a place of business or office in Maryland*; and

> (b) The delivery of the goods to be sold is made by the seller to the purchaser in this state. [emphasis added]

Two illustrative examples follow:

> For example, if the ABC Corporation, which has a sales office in Maryland, solicits orders in this State which are accepted in another state, and pursuant to those orders goods are shipped by common carrier F.O.B. the seller's place of business to the purchaser in Maryland, the sales tax applies.

> To the contrary, if a Maryland purchaser orders goods directly from a non-resident vendor who maintains no place of business in this State, the sales tax does not apply to goods sold pursuant to the order if they are shipped into Maryland from points outside thereof. . . .

The defendant's argument is not persuasive. Premier's compliance with this Rule hardly seems to be a damaging admission. Premier does not deny that the sales are made in Maryland, but only denies that the *contracts* for the sales are made in Maryland. Furthermore, the Rule expressly states that the sale will be considered to be made in Maryland if "the contract of sale is entered into conditionally . . . on account of a nonresident seller who . . . is represented by a distributor who has a place of business or office in Maryland." Such a description would seem to fit the instant case. Independent sales agents, who maintain places of business in the state, submit orders—i.e., conditional contracts of sale—for the account of and for acceptance by an out-of-state vendor. Even should the payment of the tax by Premier constitute an "admission", it does so only by the presumption that the Maryland regulation employs to enable it to reach as many transactions as it can. Maryland is free to classify an activity in one way for one purpose, such as taxation of sales, and to classify it in another way for different purposes—such as qualification and regulation of foreign corporations. There has been no showing that there is any connection between the requirements of the retail Tax Rules and those of § 7–201, nor does the Court believe any such showing could be made.

The defendant relies heavily on the case of *Thomas v. Hudson Sales Corp.*, 204 Md. 450, 105 A.2d 225 (1954). In that case, Hudson Sales was a non-resi-

dent corporation with no warehouse, factory, shop, plant or property of any kind in Maryland. It operated as the distributor for automobiles produced by Hudson Motor Car Company. Hudson Sales was represented in the Maryland area by a district manager whose general duties were to solicit franchises for the sale of Hudson cars in his territory, to solicit the sales of new Hudson cars to dealers and to assist dealers in promoting their sales. The district manager also conducted frequent meetings for the Hudson automobile dealers in the State of Maryland. But the Court of Appeals found the "plus" in the degree of control that the foreign corporation exercised over the local distributor. The foreign corporation required the dealers to purchase from it, it extended credit to the dealers, and controlled an extensive advertising campaign in Baltimore newspapers. The dealers were dependent solely on their franchise from Hudson. The continuous supervision of Hudson's dealers by Hudson's district manager constituted " . . . practically active management." 204 Md. at 464, 105 A.2d 225. *Thomas v. Hudson Sales* was distinguished in *Feldman v. Thew Shovel* as a case which held that

> the supervision and control exercised by Hudson Sales through its representatives in Maryland was almost as complete as if the representatives of Hudson Sales in this State were the sales department of Hudson Motors for the sale of Hudson automobiles and parts. 214 Md. at 393-4, 135 A. 2d at 431.

The degree of control and supervision over the local distributor which led the Court to the conclusion it reached in *Thomas v. Hudson Sales* is totally lacking in the instant case. The independent agents are free to sell other noncompetitive products; they bear their own expenses; they are not required to keep any particular type of records; they do not extend credit, nor are they given credit by Premier. The supervision and training offered by Premier's district managers consists solely of "sales promotion techniques": that is, it is solely connected to the solicitation of sales.

Nor is *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) to be relied on in the instant case. That case stands only for the explication of the limits to which a state can extend its long-arm jurisdiction over foreign corporations under the Due Process Clause. The present case involves, not the permissible limits to which Maryland can obtain *in personam* jurisdiction over the foreign corporation, but whether or not Maryland law considers Premier's activities to constitute "doing intrastate" business for the purposes of registration and qualification. There can be little doubt that, in either case, the Maryland law concerning "doing intrastate business", does not reach to the outer limits permitted by due process. *Champion Spark Plug Co.*, at 463; Auerbach, "The Long Arm" Comes to Maryland, 26 *Md.L.Rev.* 13, 20-25 (1966).

*White v. Caterpillar Tractor*, 235 Md. 368, 201 A.2d 856 (1964), likewise does not support defendant's position here. The contact between Maryland and the defendant's employees was far more extensive than in the present case. Perhaps more importantly, Caterpillar maintained a research and development program in Maryland that was entirely unconnected with the promotion of the solicitation of sales.

In conclusion, the defendant has failed to bring to the Court's attention any activity of the plaintiff foreign corporation which would indicate that its activities here were anything more than "mere solicitation". Every activity pointed to has expressly been considered in previous cases decided by the Maryland Court of Appeals and found wanting. Accordingly, the defendant's motion to dismiss will be denied.