428

538 A.2d 324

**J.C. SNAVELY & SONS, INC.**

v.

**J. Wayne WHEELER, et ux.**

**No. 963, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

March 4, 1988.

Michael G. Benjamin (Snyder & Benjamin, P.A., on the brief), Hagerstown, for appellant.

John H. Zink, III (Cook, Howard, Downes & Tracy, on the brief), Towson, for appellees.

Argued before MOYLAN, ALPERT and Robert M. BELL, JJ.

ROBERT M. BELL, Judge.

J.C. Snavely & Sons, Inc. appeals from the judgment of the Circuit Court for Baltimore County, which prohibited appellant's maintenance of a mechanics' lien action against J. Wayne Wheeler and Lillian E. Wheeler, his wife. Although the trial judge proffered two reasons in support of his conclusion, our resolution of this appeal requires that we consider only one of them, namely:

Was the trial court clearly erroneous in its findings of fact and conclusions of law in ruling that the appellant was required to be registered with the Maryland State Department of Assessments and Taxation as a foreign corporation qualified to do business in the State of Maryland in order to maintain its claim against the appellee[s]?

Our answer to that question is no; consequently, we will affirm.

The seed which grew into this appeal was sown when, on January 21, 1986, appellant contracted with Aspenwood Building Corporation to supply building materials for a dwelling which Aspenwood was constructing, pursuant to a contract with appellees, on appellees' unimproved land in Baltimore County. Although appellant performed its obligations under the contract, making deliveries of material to the job site between February 28, 1986 and July 14, 1986, Aspenwood defaulted; it failed to make payments when due. As a result, appellant caused a Notice of Intention to Claim a Mechanics' Lien to be sent, by certified mail, to appellees. That notice, although timely mailed, was not

received by appellees until more than 90 days after appellant had last furnished material for the construction.[1]

Appellant thereafter filed a Petition to Establish a Mechanics' Lien on appellees' property. Appellees contested the petition on two bases: (1) appellant failed to give timely notice of its intention to claim a mechanics' lien and (2) because appellant had neither registered nor qualified to do business in Maryland, it lacked the capacity to maintain an action in the State of Maryland. Both arguments were fully explored at a show cause hearing, at the conclusion of which, the trial judge, having found that appellant did sufficient business in the state of Maryland to require it to register with the State Department of Assessments and Taxation and that it had not done so, ruled that appellant could not maintain the action. The judge also determined that the Notice of Intention to Claim a Mechanics' Lien was untimely given since appellees did not receive the notice until more than 90 days after appellant last furnished materials for the construction.[2]

Before addressing appellant's contention that the trial judge was clearly erroneous in finding that appellant could not maintain its claim against appellees, it is necessary to

---

1. Maryland Real Property Code Ann. § 9–104(a)(2) (1981 Repl.Vol., 1987 Cumm.Supp.) provides:
 (a) Notice required to entitle subcontractor to lien.—
 \* \* \* \* \* \*
 (2) A subcontractor doing work or furnishing materials or both for or about a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle unless, within 90 days after doing work or furnishing materials for or about that single family dwelling, the subcontractor gives written notice of an intention to claim a lien in accordance with subsection (a)(1) of this section and the owner has not made full payment to the contractor prior to receiving the notice.
 Subsection (a)(1) requires the notice to be in the form specified in subsection (b). Subsection (c) provides that "[t]he notice is effective if given by registered or certified mail, return receipt requested, . . ."

2. One of the issues raised by appellant on appeal was the correctness of this ruling. At oral argument, appellees conceded that this ruling is indefensible. *See Riley v. Abrams,* 287 Md. 348, 357, 412 A.2d 996 (1980). We need not, and therefore, do not, further address the issue.

set forth the statutes and the legal principles applicable to its resolution. Maryland Corporations and Associations Code Ann. § 7–203, (1985 Repl.Vol.) *Qualification to do intrastate business,* provides:

(a) *Qualification required.*—Before doing any intrastate business in this State, a foreign corporation shall qualify with the Department.

(b) *Manner of qualification.*—To qualify the corporation shall:

(1) Certify to the Department:

(i) the address of the corporation; and

(ii) the name and address of its resident agent in this State;

(2) File with the Department a certificate which:

(i) States that the corporation is in good standing under the laws of the place where it is organized; and

(ii) Is executed by the official of that place who has custody of the pertinent records.

\* \* \* \* \* \*

(c) *Period for which qualification effective.*—Unless terminated by the corporation, the qualification is effective as long as:

(1) The corporation has a resident agent in this State;

(2) The corporation does not forfeit its right to do intrastate business under the laws of this State; and

(3) If the corporation qualifies or changes its name after June 1, 1951, the name of the corporation complies with the requirements of Title 2 of this article relating to corporate names.

Section 7–301, on the other hand, "embodies a test for determining whether a foreign corporation is 'doing business' in Maryland." *Yangming Marine Transport Corp. v. Revon Products, U.S.A., Inc.,* 311 Md. 496, 502, 536 A.2d 633 (1988) citing *G.E.M., Inc. v. Plough, Inc.,* 228 Md. 484, 486, 180 A.2d 478 (1962). That section, headed "Failure to register or qualify—Maintenance of suit", provides:

If a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of Subtitle 2 of this title, neither the corporation nor any person claiming under it may maintain a suit in any court of this State unless it shows to the satisfaction of the court that:
(1) The foreign corporation or the person claiming under it has paid the penalty specified in § 7–302 of this subtitle; and
(2) Either:
(i) The foreign corporation or a foreign corporation successor to it has complied with the requirements of Subtitle 2 of this title; or
(ii) The foreign corporation and any foreign corporation successor to it are no longer doing intrastate, interstate, or foreign business in this State.[3]

Section 7–103, which details "[a]ctivities not considered intrastate business" is also relevant to our inquiry. It provides:

In addition to any other activities which may not constitute doing intrastate business in this State, for the purposes of this article, the following activities of a foreign corporation do not constitute doing intrastate business in this State:
(1) Maintaining, defending, or settling an action, suit, claim, dispute, or administrative or arbitration proceeding;
(2) Holding meetings of its directors or stockholders or carrying on other activities which concern its internal affairs;
(3) Maintaining bank accounts;

---

**3.** The "doing business" test under this section is not analogous to the "transacting business" test under Maryland Cts. and Jud.Proc.Code Ann. § 6–103(b)(1), pertaining to Maryland assertion of personal jurisdiction over foreign corporations, because, fewer contacts with the state are necessary. *See Yangming Transport Corp.,* 311 Md. at 502–03, 536 A.2d 633.

(4) Maintaining offices or agencies for the transfer, exchange, and registration of its securities; ·

(5) Appointing and maintaining trustees or depositaries with respect to its securities;

(6) Transacting business exclusively in interstate or foreign commerce; and

(7) Conducting an isolated transaction not in the course of a number of similar transactions.

The requirements of §§ 7-203 and 7-301, that a foreign corporation qualify before doing intrastate business in Maryland under pain of being prohibited from maintaining a suit in Maryland, provide the framework for resolution of the issue before us. Whether the facts before the trial judge fit within that framework requires that we consider the principles which have been applied to determine when a foreign corporation is doing intrastate business in Maryland. To do so we necessarily must look at case law and, to the extent applicable, any applicable statutes.

The appellate decisions of this State make clear that "a foreign corporation is doing business within a state when it transacts some substantial part of its ordinary business therein." *S.A.S. Personnel Consultants, Inc. v. Pat–Pan, Inc.*, 286 Md. 335, 339, 407 A.2d 1139 (1979) quoting *Chesapeake Supply and Equipment Corp. v. Manitowoc Eng'r Corp.*, 232 Md. 555, 562, 194 A.2d 624 (1963). *See Finch v. Hughes Aircraft Corp.*, 57 Md.App. 190, 245, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1190, °84 L.Ed.2d 336, *reh'g denied*, 471 U.S. 1049, 105 S.Ct. 2043, 85 L.Ed.2d 341 (1985), *G.E.M., Inc.*, 228 Md. at 488–89, 180 A.2d 478. Such a corporation is deemed "present" in the state when it does "a substantial amount of localized business in this State." *Yangming Marine Transport Corp.*, 311 Md. at 502, 536 A.2d 633. Where the corporation does not engage in significant business activity in Maryland, § 7-301 has been interpreted to permit a corporation to maintain an action in the courts of this State even though it has neither registered nor qualified. *Id.*, at 505, 536 A.2d 633.

 Mere solicitation, even if accompanied by activities directly related to the solicitation, including interstate delivery of the goods into the state, is not sufficient to constitute "doing business"; however, solicitation, accompanied by the shipment of goods and an extensive set of activities or management functions in the state, is. *S.A.S. Personnel Consultants,* 286 Md. at 339, 407 A.2d 1139; *Gilliam v. Moog Indus., Inc.,* 239 Md. 107, 109, 210 A.2d 390 (1965); *White v. Caterpillar Tractor Company,* 235 Md. 368, 372–74, 201 A.2d 856 (1964); *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 465–66, 105 A.2d 225 (1954). Whether the acts engaged in by the foreign corporation are sufficient to constitute "doing business" must be determined from the facts of each case, with particular emphasis on the nature and extent of the business and activities occurring in the forum state. *S.A.S. Personnel Consult., supra,* 286 Md. at 339, 407 A.2d 1139; *White v. Caterpillar Tractor Company,* 235 Md. at 372, 201 A.2d 856. Among the factors to be considered are: (1) whether the foreign corporation pays state taxes; (2) whether it maintains property, an office, telephone listings, employees, agents, inventory, research and development facilities, advertising and bank accounts in the state; (3) whether it makes contracts in the state; and (4) whether its management functions in the state are pervasive. *S.A.S. Personnel Consult., supra.* The burden of proving that the foreign corporation is doing business in the state rests with the proponent of that proposition. *Id.*

 How the courts have applied these principles is demonstrated by the Court's analysis of the facts in *S.A.S. Personnel Consult.:*

Here there are insufficient facts to show that S.A.S. was "doing business" in Maryland. Its office was in the District of Columbia where it was incorporated. Before 30 January 1978, it did not maintain an office in Maryland. None of its employees was physically present in Maryland, and none of them conducted employment agency operations in Maryland. There are no facts to show that S.A.S. paid Maryland taxes, maintained a telephone

listing or bank accounts in Maryland, or that it exercised any managerial functions in Maryland. The fact that S.A.S. advertised in *Washingtonian Magazine* establishes nothing more than mere solicitation. S.A.S's statement that it was "the largest hospitality personnel service in the Washington metropolitan area" does not support a rational inference that any portion of its business was necessarily conducted in Maryland, and establishes, at best, mere solicitation. The only other fact tending to show that S.A.S. was "doing business" within the State of Maryland was its referral of Mr. Foucard to Pat–Pan which subsequently employed him at its Maryland restaurant. The referral of potential employees by S.A.S. is analogous to the shipment of goods by a foreign manufacturer. Thus, the advertisement, statement, and referral establish only that S.A.S. solicited business in and did the equivalent of shipping goods into the State of Maryland.

286 Md. at 340, 407 A.2d 1139. The Court therefore held that S.A.S. was not "doing business" in Maryland. *See also G.E.M., Inc., supra,* 228 Md. at 488–89, 180 A.2d 478. There, the Court held that a company was not "doing business" in Maryland where, besides keeping salesmen in Maryland, "[it] does nothing in Maryland": the salesmen never delivered goods, even in an emergency; they had no discretion in negotiating prices; no showrooms or other places for display of its products were maintained in Maryland; the company had no franchise agreements with any wholesale distributors; its salesmen were not authorized to list the company name in connection with their own in the telephone book, or to use its name on calling cards; and the company did not pay withholding taxes under salesmen's commissions to the state of Maryland. 228. Md. at 448, 180 A.2d 478. *But see White v. Caterpillar Tractor, supra,* in which "the continuous research and testing activities conducted by the research engineer and others, the regular visits of other employees for various business purposes, and the supervision and control it exercised over Alban in the

conduct of the dealership", *Id.*, 235 Md. at 373, 201 A.2d 856, were held to be factors which, when considered as a whole, indicated that Caterpillar was "doing business" in Maryland. *Id.* Of course, a foreign corporation is not doing business if it merely enters into "an occasional contract with Maryland businesses." *Aeropesca Ltd. v. Butler Aviation*, 44 Md.App. 610, 618–19, 411 A.2d 1055 (1980), *cert. denied*, 287 Md. 749 (1980).

The evidence produced at the show cause hearing established that appellant was a foreign corporation, based in Pennsylvania, and was neither qualified nor registered to do business in the State of Maryland. Although it neither owned nor leased any property, real or personal, maintained no bank accounts, had no employees, and did not receive rental income from property in Maryland, appellant's Maryland transactions accounted, on the average, for a little more than two percent of appellant's business. These transactions resulted in an average of approximately $500,-000 per year in sales by appellant. Moreover, there was testimony that appellant paid sales taxes on deliveries made in Maryland and that 99% of the time the delivery of goods into Maryland was made by company trucks, registered in Maryland and operated by company drivers. Furthermore, company trucks, in addition to making deliveries into Maryland were rented by appellant to Maryland concerns to support cranes. Finally, there was testimony that appellant's representatives came into Maryland to provide potential customers with merchandising advice and, while here, accepted orders. These representatives also visited job sites in Maryland to respond to complaints or problems concerning appellant's products.

There is absolutely no dispute that appellant was, at all relevant times, *i.e.* when it filed its petition and at the show cause hearing, a foreign corporation which was neither registered nor qualified to do business in the State of

Maryland.[4] Consequently, the sole issue to be determined is whether the trial court's finding that appellant was "doing business" in Maryland was clearly erroneous. *See* Maryland Rule 1086. In performing this function, we must "decide only whether there is any evidence legally sufficient to support the findings of the trier of fact and, in making this decision, [to assume] the truth of all the evidence, and of all the favorable inferences fairly deducible therefrom tending to support the factual conclusion of the trial court." *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 354, 517 A.2d 1122 (1986). We hold that there is substantial evidence in the record to support the conclusion of the trial court; accordingly, its findings were not clearly erroneous.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

4. Appellant advises us in its brief that it registered with the State Department of Assessments and Taxation subsequent to the show cause hearing. While registration may be relevant to the issue before the court, since it was neither presented to nor considered by the trial court in rendering its decision, we will not further comment on it. *See* Maryland Rule 1085.