*Willow Grove Citizens Association v. County Council of Prince George's County, Maryland*, No. 2018, September Term, 2016.  Opinion filed on December __, 2017, by Berger, J.

## HEADNOTES

CORPORATIONS AND BUSINESS ASSOCIATIONS - LIMITED LIABILITY COMPANIES - EFFECT OF FORFEITURE

Forfeiture has no effect on the validity of an LLC's contracts or other acts.

CORPORATIONS AND BUSINESS ASSOCIATIONS - LIMITED LIABILITY COMPANIES - EFFECT OF FORFEITURE

A domestic LLC's application for a special exception was valid even though the LLC had forfeited its right to do business in Maryland and the right to use its name.

CORPORATIONS AND BUSINESS ASSOCIATIONS - LIMITED LIABILITY COMPANIES - EFFECT OF FORFEITURE

The rule that a forfeited LLC may not bring a lawsuit in a Maryland court does not apply to applications for special exceptions.

CORPORATIONS AND BUSINESS ASSOCIATIONS - FOREIGN CORPORATIONS - AUTHORIZATION TO DO BUSINESS

A foreign corporation that applied for a special exception was maintaining an administrative proceeding, which does not constitute "doing intrastate business" under Maryland law.

ZONING AND PLANNING - SPECIAL EXCEPTIONS

A local zoning authority did not err in approving an application for a special exception made by a forfeited LLC where the application was valid and the LLC had regained good standing with SDAT by the time the special exception was granted.

Circuit Court for Prince George's County
Case No. CAL16-07496

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2018

September Term, 2016

_____

WILLOW GROVE CITIZENS
ASSOCIATION, et al.

v.

COUNTY COUNCIL OF PRINCE
GEORGE'S COUNTY, MARYLAND

_____

Berger,
Beachley,
Kenney, James A., III
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed:  December 20, 2017

This case is an appeal from a judgment entered on judicial review of a zoning decision in Prince George's County. Appellees Presidential Care, LLC ("Presidential") and Stoddard Baptist Home, Inc. ("Stoddard") applied for a special exception with the Prince George's County Office of Zoning.[1] Upon the recommendation of the Zoning Hearing Examiner ("Examiner"), the Prince George's County Council ("County Council"), sitting as the District Council, voted to approve the special exception. Various persons of record filed a petition for judicial review in the Circuit Court for Prince George's County, which affirmed. Willow Grove Citizens Association, Inc. and other persons of record (collectively, "Willow Grove") subsequently appealed the judgment of the circuit court.

On appeal, Willow Grove presents five questions for our review, which we have rephrased and consolidated as follows:

> Whether the County Council's decision to grant the application for the special exception was legally correct in light of the fact that
>
> a. Presidential had, at the time of filing, forfeited its right to do business in Maryland;
>
> b. Stoddard was, at the time of filing, an unregistered foreign corporation;
>
> c. People's Zoning Counsel did not recuse himself despite his involvement in the sale of the subject property to Presidential.

For the reasons explained herein, we shall affirm the judgment of the circuit court.

---

[1] Stoddard's role in the application for the special exception at issue is not entirely clear, as we will discuss below.

**FACTS AND PROCEEDINGS**

The land at the heart of this dispute is a 7.91 acre property located at 3911 Lottsford Vista Road in Bowie, Maryland ("the Property"). Under the Largo-Lottsford Master Plan and Sectional Map Amendment (Zoning Ordinance No. 3-2016), the Property is zoned Rural Residential. The prior owner, William Youngblood ("Youngblood"), obtained a special exception pursuant to Zoning Ordinance 7-2001 to build a 160-person child day care center, a 40-person adult day care center, and a 72-person congregate living facility. These zoning entitlements were never developed. On August 27, 2001, Youngblood sold the Property to Presidential, a limited liability company organized in Maryland in 2001. Youngblood's attorney at the time of the sale was Stan Brown ("Brown"). Brown conducted the settlement and was engaged in some of the contract work associated with the Property.

On November 1, 2012, Presidential's right to do business in Maryland and use its name was forfeited. Presidential's rights remained forfeited as of February 21, 2014, when it applied for a special exception to operate a 15-person adult day care facility and a 63-unit assisted living facility. The application was accepted by the Maryland National Capital Park and Planning Commission. The applicant was listed as "Presidential Care, LLC, by Stoddard Baptist Home, Inc., Managing Member." Stoddard, a foreign corporation organized in the District of Columbia, is the sole member of Presidential. At the time of filing, Stoddard was not registered to do business in Maryland.

The Examiner conducted a public hearing to consider the application for a special exception. Brown participated in this hearing as People's Zoning Counsel.[2] Brown disclosed his prior involvement in the sale of the Property and asked, on the record, whether anyone present objected to his participation in the proceedings. There were no objections. The Examiner approved the application for a special exception on October 15, 2014.

The Examiner's decision was appealed to the County Council.[3] After hearing oral arguments, the County Council remanded the matter for the Examiner to determine whether Presidential and Stoddard were in good standing with the State Department of Assessments and Taxation ("SDAT").

On May 4, 2015, Presidential's rights were reinstated. On June 2, 2015, Stoddard registered with SDAT and became qualified as a corporation in Maryland. The Examiner conducted a second public hearing on the application for a special exception in June of 2015. At the second hearing, Presidential and Stoddard provided certificates of good standing from SDAT. Thereafter, the Examiner conditionally recommended approval of the application for a special exception.

---

[2] People's Zoning Counsel is appointed by the County Council to protect the public interest and ensure the compilation of a full and complete record. Prince George's County Code § 27-136.

[3] The County Council of Prince George's County is the District Council for that portion of the Maryland-Washington Regional District located in Prince George's County. Md. Code (2012, 2016 Supp.), § 22-101 of the Land Use Article ("Land Use"). As such, the County Council has authority over zoning matters in Prince George's County. Land Use § 22-104. When sitting as a District Council, the County Council acts as an administrative agency. *Cnty. Council v. Brandywine Enter.*, 350 Md. 339, 342 (1998).

Willow Grove and other persons of record appealed to the County Council. After hearing oral arguments, the County Council found that "Presidential was legally authorized to engage in the *activity* of filing an application for a special exception concerning real or personal property," and that Presidential's forfeiture did not impair the validity of its application. The County Council also found that Stoddard, in applying for a special exception, was not doing business in Maryland. As a result, the County Council approved the application for a special exception on February 8, 2016. The Circuit Court for Prince George's County affirmed the County Council's decision.

## DISCUSSION

### I. Standard of Review

When reviewing "the decision of an administrative agency, this Court reviews the agency's decision, not the circuit court's decision." *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 273 (2012) (quoting *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008)); *Ware v. People's Counsel for Balt. Cnty.*, 223 Md. App. 669, 680 (2015) ("In an appeal from a judgment entered on judicial review of a final agency decision, we look 'through' the decision of the circuit court to review the agency decision itself."). We are "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008) (internal quotation marks and citations omitted).

Although we generally defer to the factual findings of an administrative agency, "[w]e review an agency's decisions as to matters of law *de novo* for correctness." *Wallace H. Campbell & Co. v. Md. Comm'n on Human Relations*, 202 Md. App. 650, 663 (2011). Nevertheless, "[e]ven with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Grasslands Plantation, Inc. v. Frizz-King Enters., LLC*, 410 Md. 191, 204 (2009) (quoting *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 69 (1999)).

Willow Grove objects to the decision of the County Council on purely legal grounds. The only question, then, is whether the approval of the application for a special exception was premised on legally erroneous conclusions of law. Because the County Council does not administer the statutory provisions governing the rights of corporate entities, we will give no deference to the County Council's legal conclusions.

## II. The Decision of the County Council Was Legally Correct.

*A. Presidential's Application for a Special Exception Was Valid.*

Willow Grove argues that Presidential's application for the special exception was "a nullity" because Presidential had forfeited its right to do business in Maryland and use its name. We disagree. The County Council correctly concluded that Presidential's application was valid under Maryland law.

When a Maryland LLC fails to pay its taxes, SDAT may issue a proclamation declaring that the LLC has forfeited the right to do business in Maryland and the right to

5

use its name.  Md. Code (1975, 2014 Repl. Vol., 2016 Supp.), § 4A-911 of the

Corporations & Associations Article ("Corps. & Ass'ns").  Unlike a corporation, an LLC

does not become a non-entity after forfeiture.  *Price v. Upper Chesapeake Health Ventures*,

192 Md. App. 695, 705-09 (2010).  Critically, forfeiture has no effect on the validity of an

LLC's contracts or other acts:

> The forfeiture of the right to do business in Maryland and the
> right to the use of the name of the limited liability company
> under this title does not impair the validity of a contract *or act*
> of the limited liability company entered into or done either
> before or after the forfeiture, or prevent the limited liability
> company from defending any action, suit, or proceeding in a
> court of this State.

Corps. & Ass'ns § 4A-920 (emphasis added).

Here, Willow Grove's claim that "Presidential's actions were a nullity" is contrary

to the express language of § 4A-920.  It is undisputed that Presidential was an LLC when

it applied for a special exception.  As such, Presidential was a legal entity with the power

to enter into binding contracts, and its acts were at all times legally valid.  We hold,

therefore, that Presidential's application was valid and that, consequently, the County

Council did not err in approving the application for a special exception.

Willow Grove contends that, in applying for a special exception, Presidential was

actually initiating a judicial proceeding.  When an LLC forfeits the right to do business in

Maryland, it also loses the right to bring a lawsuit in Maryland court.  As we explained in

*Price v. Upper Chesapeake Health Ventures*,

> Nevertheless, with respect to court proceedings, [§ 4A-920]
> expressly provides that a forfeited LLC may only defend an
> action in court.  The negative implication of such language, and

the sweep of the "doing business" and name "using" prohibition is that the company may not file or maintain a lawsuit after its rights have been forfeited.

192 Md. App. at 708; *see also Bayly Crossing, LLC v. Consumer Prot. Div., Office of Atty. Gen.*, 188 Md. App. 299, 319 (2009), *aff'd in part, rev'd in part*, 417 Md. 128 (2010). Willow Grove contends that Presidential's application was invalid under the prohibition against bringing lawsuits embodied in Corps. & Ass'ns § 4A-920.

In our view, Willow Grove's interpretation of § 4A-920 is contrary to the plain meaning of that statute. Our reasoning in *Price* was based on the "negative implication" of the final phrase of § 4A-920, which provides that an LLC may *defend* any lawsuit after forfeiture. *Id.* There is no such implication in the first part of § 4A-920, which broadly affirms the validity of "a contract or act of the limited liability company entered into or done either before or after the forfeiture." Indeed, the language in § 4A-920 concerning lawsuits applies to actions "*in a court of this State*" (emphasis added). Because Presidential did not file its application in a Maryland court, the implicit prohibition against bringing lawsuits in § 4A-920 is irrelevant.

B. *Stoddard Was Not "Doing Business" in Maryland.*

Willow Grove maintains that Stoddard "did not validate" Presidential's application for a special exception because Stoddard, a foreign corporation, was not registered to do business in Maryland.[4] Because Willow Grove has failed to show that Stoddard was doing

---

[4] It is unclear whether Stoddard was a co-applicant or merely Presidential's agent. For our present purposes, it is a distinction without a difference. The question before us is whether Stoddard's involvement in the application for a special exception -- whether as agent or co-applicant -- constituted "doing business" under Maryland law.

7

business in Maryland, we hold that Stoddard's involvement did not invalidate the application for the application for special exception.

As a preliminary matter, we are not persuaded by Willow Grove's argument that "[t]he acts of a corporation doing business in the State of Maryland without legal consent are void." In support of this argument, Willow Grove cites *Kitchen v. Himelfarb*, 254 Md. 372, 376 (1969), for the proposition that an unregistered corporation is a non-entity. Insofar as *Kitchen* stands for that proposition, it has been superseded by statute. Under current law, unregistered foreign corporations, far from being "non-entities," are allowed to engage in various in-state activities, such as "[m]aintaining, defending, or settling an action, suit, claim, dispute, or administrative or arbitration proceeding." Corps. & Ass'ns § 7-103. As we explained in *Aeropesca Ltd. v. Butler Aviation Int'l, Inc.*,

> The statutory provisions relating to foreign corporations "doing business" in Maryland . . . were never intended to bar foreign corporations from entering into an occasional contract with Maryland businesses and, when necessary, pursuing in Maryland courts, rights under that contract or actions arising out of it.

44 Md. App. 610, 618 (1980). We, therefore, reject appellants' contention that Stoddard was a legal non-entity in Maryland when it applied, as an agent or co-applicant, for the application for the special exception.

To be sure, a foreign corporation must register with SDAT before doing interstate business in Maryland. Corps. & Ass'ns § 7-202. A foreign corporation is also required to qualify with SDAT before doing intrastate business. Corps. & Ass'ns § 7-203. A foreign corporation is doing business in Maryland "when it transacts some substantial part of its

8

ordinary business therein." *Tiller Const. Corp. v. Nadler*, 334 Md. 1, 10 (1994) (quoting

*J.C. Snavely & Sons, Inc. v. Wheeler*, 74 Md. App. 428, 434 (1988)). This inquiry takes

into consideration the following factors:

> (1) whether the foreign corporation pays state taxes; (2) whether it maintains property, an office, telephone listings, employees, agents, inventory, research and development facilities, advertising and bank accounts in the state; (3) whether it makes contracts in the state; and (4) whether its management functions in the state are pervasive.

*Tiller Const. Corp.*, *supra*, 334 Md. at 11 (quoting *J.C. Snavely & Sons, Inc. v. Wheeler*,

74 Md. App. 428, 434-35 (1988)). The burden of proving that a foreign corporation is

doing business in the State rests with the proponent of that proposition. *J.C. Snavely &*

*Sons, Inc. v. Wheeler*, 74 Md. App. 428, 435 (1988) (citing *S.A.S. Pers. Consultants, Inc.*

*v. Pat-Pan, Inc.*, 286 Md. 335, 339 (1979)); *see also Tiller Const. Corp.*, *supra*, 334 Md.

at 11.

Here, Willow Grove has failed to carry its burden of showing that Stoddard was

doing business in Maryland. Willow Grove's argument appears to rest solely on

Stoddard's involvement in the application for the special exception at issue.[5] Such isolated

actions are generally insufficient to constitute "doing business." *See Aeropesca Ltd.*,

*supra*, 44 Md. App. at 618 (a corporation that contracted to replace an aircraft part and later

---

[5] Willow Grove alleges generally that "Appellees purchased property in Maryland, hired counsel to represent them in Maryland, paid taxes in Maryland, had employees in Maryland and solicited the local government for services." These allegations, however, are not supported by citations to the record, and they appear to refer primarily to the activities of Presidential.

9

to purchase an airplane was not "doing business"); *see also Tiller Const. Corp.*, *supra*, 334 Md. at 15 (rejecting the argument that "performing a single act of construction constitutes 'doing business'").

In applying for a special exception, Stoddard was maintaining an administrative proceeding. *See County Council v. Brandywine Enterprise*, 350 Md. 339, 342 (1998) (when sitting as a district council, the County Council acts as an administrative agency). Under Corps. & Ass'ns § 7-103, maintaining an administrative proceeding does not constitute "doing intrastate business."[6] We hold, therefore, that Presidential's application was valid notwithstanding Stoddard's involvement as either agent or co-applicant.[7]

---

[6] Willow Grove argued below that "maintaining," as used in § 7-103, does not refer to the filing of a new complaint. As used elsewhere in that Title, however, "maintaining" has been interpreted to mean "bringing a lawsuit." *See, e.g., Yangming Marine Transp. Corp. v. Revon Prod. U.S.A., Inc.*, 311 Md. 496, 502 (1988) (observing that, "under § 7-301, a foreign corporation that has not complied with § 7-202 or § 7-203 is barred *from suing* in Maryland if the corporation 'is doing . . . any intrastate, interstate, or foreign business in this State'" (emphasis added)).

[7] Even if Stoddard had been doing business in Maryland without consent, we are not convinced that the application for the special exception would be invalid. The contracts of an unregistered foreign corporation, for example, are valid notwithstanding its failure to comply with registration requirements. Corps. & Ass'ns § 7-305. To be sure, a foreign corporation that does business without consent loses the right to "maintain a suit" in Maryland court. Corps. & Ass'ns § 7-301. Applying for a zoning exception, however, is not the same as bringing a lawsuit. Further, by the time the special exception was approved, Stoddard was in good standing with SDAT and, therefore, had regained the right to maintain a suit under Corps. & Ass'ns § 7-301.

*C. Brown's Alleged Conflict of Interest Was Not Raised Before the Examiner or the County Council.*

Willow Grove argues that the proceedings below were unfair because Brown, People's Zoning Counsel, had been involved in Presidential's purchase of the Property. As a result, Willow Grove maintains that Brown should have recused himself due to his prior involvement with the purchase of the property. In the alternative, Willow Grove contends that the Examiner should have asked whether anyone objected to Brown's participation. We hold that this issue was not preserved for judicial review.

In reviewing an appeal from a judgment entered on judicial review of an administrative decision, "a court ordinarily may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency." *Zakwieia v. Baltimore Cty., Bd. of Educ.*, 231 Md. App. 644, 649-50 (2017), *cert. denied sub nom. Zakwieia v. Baltimore Co. Bd. of Educ.*, 454 Md. 676 (2017)); *see also Brodie v. Motor Vehicle Admin. of Md.*, 367 Md. 1, 4 (2001) (stating that "[a] court will review an adjudicatory agency decision solely on the grounds relied upon by the agency" (quoting *Dept. of Health v. Campbell*, 364 Md. 108, 123 (2001)). Here, Willow Grove did not raise Brown's alleged conflict of interest at any stage of the administrative proceeding. The issue, therefore, was not preserved for judicial review.[8]

---

[8] Insofar as the issue was preserved, it is without merit. At the first hearing before the Examiner, Brown disclosed his involvement in the sale of the Property and asked, on the record, whether there was any objection to his participation in the proceedings. Notably, Willow Grove provides no legal authority in support of its view that Brown's participation rendered the proceedings unfair.

11

Presidential's application for a special exception was valid notwithstanding that its right to do business in Maryland was forfeited. Stoddard's participation as either an agent or co-applicant did not invalidate the application for a special exception because it did not constitute "doing business" in Maryland. For the foregoing reasons, we hold that the County Council's decision to approve the application for the special exception was correct as a matter of law.[9]

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**

---

[9] We need not address the fourth question presented by Willow Grove, which concerns the lack of factual and legal findings made by the circuit court. In reviewing an appeal from a judgment entered on judicial review of an administrative decision, we review the agency's decision, not the circuit court's decision. *Brandywine Enter.*, *supra*, 350 Md. at 342.